```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

MR. TODD C. FORD, JR.,                No. 22-cv-4500 (NLH) (AMD)

        Plaintiff,

  v.                                   OPINION

EUGENE CALDWELL, et al.,

        Defendants.

APPEARANCE:

Todd C. Ford, Jr.
357376
Hudson County Jail
35 Hackensack Ave.
Kearny, NJ 07032

    *Plaintiff Pro se*

HILLMAN, District Judge

    Plaintiff Todd C. Ford, Jr., a prisoner presently confined in the Hudson County Jail, New Jersey, submits this complaint under 42 U.S.C. § 1983.  ECF No. 1.  At this time, the Court must review the complaint pursuant to 28 U.S.C. § 1915 to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant

1

who is immune from such relief.  For the reasons set forth below, the Court will permit the complaint to proceed in part.[1]

I.   BACKGROUND

Plaintiff is one of many pretrial detainees who have filed suit against various Cumberland County officials for the Cumberland County Jail's ("CCJ" or "Jail") response, or lack thereof, to the COVID-19 pandemic.  See Ford v. Smith, et al., No. 20-18863 (filed Dec. 14, 2020).  In this complaint, Plaintiff challenges his transfer from CCJ to Hudson County Jail ("HCJ").  He alleges Defendant CCJ Warden Eugene Caldwell "maliciously transferred [him] in a 'Hostile' manner" to HCJ in retaliation for "speaking out about Cumberland Cty Jail conditions . . . despite being aware that it would further put [him] at a 'Greater Risk' of catching COVID and further deprive me of constitutional rights."  ECF No. 1 at 4 (emphasis in original).

Plaintiff also alleges Defendants HCJ Warden Oscar Avilles, former HCJ Warden Ronald Edwards, and HCJ medical care provider

---

[1] The Court's preliminary review under 28 U.S.C. § 1915 does not determine whether the allegations in the complaint would survive a properly supported motion to dismiss filed by a defendant after service.  See Richardson v. Cascade Skating Rink, No. 19-08935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment." (internal quotation marks omitted)).

Well Path Medical Services subjected him to punitive conditions of confinement and are denying him medical care. He further claims Defendants Avilles and Edwards failed to establish policies that would allow Plaintiff "to prepare a proper defense through providing 'Legal Services/Law Library' effectively . . . ." ECF No. 1 at 5.

II.  STANDARD OF REVIEW

To survive a sua sponte screening for failure to state a claim, a complaint must allege "sufficient factual matter" to show that the Plaintiff's claims are facially plausible. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520–21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court

must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

III. DISCUSSION

A.   Transfer to Hudson County Jail

Plaintiff was transferred from CCJ to HCJ on May 13, 2022. ECF No. 1 at 7.  He alleges Defendant Caldwell "maliciously transferred [him] in a 'Hostile' manner" to HCJ in retaliation for "speaking out about Cumberland Cty Jail conditions . . . despite being aware that it would further put [him] at a 'Greater Risk' of catching COVID and further deprive me of constitutional rights."  ECF No. 1 at 4 (emphasis in original). Also, Defendant Avilles allegedly "[a]llowed [Plaintiff] to be transferred under some unconstitutional conditions" allegedly putting Plaintiff "at a 'greater risk' of catching COVID-19 . . . ."  Id.

"To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action."  Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.

4

2001)).  Pursuing a civil rights complaint in this Court is unquestionably protected activity, but Plaintiff has not plausibly alleged that his protected activities in this Court was a substantial or motivating factor in the transfer decision.

Plaintiff basis his retaliation claim on the premise that he asked Defendant Caldwell not to transfer him due to the conditions at HCJ and impact on his ability to prepare his defense with his criminal case attorneys.[2]  ECF No. 1-3 at 7.  He notes Defendant Caldwell responded "'C.C.D.O.C. wants the jail closed' . . . ."  Id.  See also ECF No. 7 at 6 (grievance response from Defendant Caldwell stating "The CCDOC will be a transport hub and will not be 'housing' inmates any longer.").  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The facts alleged in the complaint are not enough to "to raise a reasonable expectation that discovery will reveal evidence of" retaliation.  Id.  The

---

[2] The policy of transferring detainees from the Cumberland County Jail to Hudson County was extensively litigated in the New Jersey state courts.  The New Jersey Public Defender's Office challenged the contract on Sixth and Fourteenth Amendment grounds in the Superior Court of New Jersey and obtained a preliminary injunction prohibiting CCJ from transferring any inmate.  Krakora, et al, v. County of Cumberland, et al., Case No. CAM-L-3500-20 (filed Oct. 22, 2020).  The New Jersey Supreme Court declined to hear the matter and lifted the injunction.  Krakora for State v. Cty. of Cumberland, 259 A.3d 288, reconsideration denied sub nom. Krakora v. Cty. of Cumberland, 262 A.3d 424 (N.J. 2021).

5

Court will dismiss this claim and Defendants Caldwell and Avilles without prejudice.

B.   Hudson County COVID-19 Claims

Plaintiff challenges his conditions of confinement based on Hudson County's allegedly deficient response to COVID-19.  He also asserts Defendants Avilles, Edwards, Well Path, and John Does 1-10 are denying him medical care for COVID-19 related illnesses and complications.

"In accordance with the Supreme Court's decision in Bell v. Wolfish, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty."  Hope v. Warden York County Prison, 972 F.3d 310, 325 (3d Cir. 2020).  "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'"  Id. at 326 (quoting Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2008) ("Hubbard II")).  "'[T]he ultimate question' is whether conditions are 'reasonably related to a legitimate governmental objective.'"  Id. (quoting Hubbard II, 538 F.3d at 236) (alteration in original).  If detainees "are subject to conditions unrelated to a legitimate governmental objective, 'we may infer "that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees qua detainees."'"  Id. (quoting E. D. v. Sharkey, 928 F.3d 299, 307 (3d Cir. 2019);

6

Hubbard II, 538 F.3d at 232).  Courts must "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose."  Id. (citing Hubbard v. Taylor, 399 F.3d 150, 159-60 (3d Cir. 2005) ("Hubbard I")).

Plaintiff alleges that "[n]o hand sanitize is available to properly wash hands, nor is any 'Anti-bacterial' soap passed out weekly . . . ."  ECF No. 1-3 at 2.  He states HCJ officers are not required to wear masks, and "[p]retrial detainees don't wear any masks on the units in the 'Dormitory' or 'Cells' areas Where over 60 inmates are housed at anytime!".  Id.  "A[n] outside cleaning crew cleans the 'hallways' and other 'main areas.'  But they do not clean the Dormitory or cell areas . . . ."  Id.  He states Defendants Avilles and Edwards failed to establish policies to address COVID-19.  Accepting the alleged facts as true and construing the complaint liberally, the Court will permit Plaintiff's conditions of confinement claims to proceed.

Claims by pretrial detainees for failing to provide adequate medical care arise under the Fourteenth Amendment Due Process Clause and are analyzed "under the standard used to evaluate similar claims brought under the Eighth Amendment[.]"  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir.

7

2003).  The Court will therefore review Plaintiff's claims under the same standard used to evaluate similar claims brought under the Eighth Amendment.  Moore v. Luffey, 767 F. App'x 335, 340 (3d Cir. 2019).[3]

Plaintiff, an asthmatic, alleges he began feeling ill within two weeks of his transfer to HCJ.  ECF No. 1 at 8.  He requested medical treatment for coughing, sneezing, headaches, runny nose, and shortness of breath, but did not receive a response.  Id.  He has also submitted several supplements in which he alleges being denied medical care on an ongoing basis.  See, e.g., ECF Nos. 10, 21, and 26.  Accepting the alleged facts as true and construing the complaint liberally, the Court will permit Plaintiff's denial of medical care claims to proceed.

C.   First and Sixth Amendment Violations

Plaintiff alleges that he is being deprived of his Sixth Amendment right to counsel and First Amendment right to access the courts because Defendants Avilles and Edwards did not establish proper policies.  See ECF Nos. 1-3, 17.

---

[3] The Supreme Court has applied an "objectively unreasonable" standard to analyze an excessive force claim under the Fourteenth Amendment.  Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015). However, the Third Circuit has declined to address whether the "objectively unreasonable" standard applies to a deliberate indifference to medical need analysis.  Moore, 767 F. App'x at 340 n.2.

8

Plaintiff alleges HCJ does not provide an "in person" law library and only has one computer designated for legal activities. ECF No. 17 at 6. He states detainees cannot obtain copies from the computer and the computer is not connected to the internet. Id. He states HCJ does have a "'law library' on a 'tablet'" that does allow access to legal research but cannot be used to obtain copies or type up legal papers. Id.

"Meaningful access to the courts is the touchstone, there is no 'abstract, freestanding right to a law library or legal assistance.'" Ward v. Aviles, No. 11-6252, 2016 WL 1461753, at *2 (D.N.J. Apr. 13, 2016) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). "An access to the courts claim 'is ancillary to the underlying claim,' and, as such, a plaintiff 'must identify a "nonfrivolous," "arguable" underlying claim' that was lost. To that end, the complaint must describe the underlying claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Presbury v. Wetzel, 789 F. App'x 294, 295 (3d Cir. 2020) (per curiam) (quoting Christopher v. Harbury, 536 U.S. 403, 415, 416-18 (2002)). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 351. Plaintiff has not alleged facts that the alleged deficiencies in

9

HCJ's law library caused him to lose a nonfrivolous claim. This claim will be dismissed without prejudice.

"Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." Prater v. City of Phila., No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing Benjamin v. Fraser, 264 F.3d 175, 186 (2d Cir. 2001)). "With respect to restrictions on attorney contact with clients, the Supreme Court has held that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys and that prison regulations and practices that unjustifiably obstruct the availability of professional representation are invalid." Ortiz v. City of Phila., No. 21-3100, 2022 WL 1443425, at *6 (E.D. Pa. May 6, 2022) (cleaned up). "Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Id. (cleaned up). "A prison regulation restricting a pretrial detainee's contact with his attorney is unconstitutional where it unreasonably burdens the inmate's opportunity to consult with his attorney and to prepare his defense." Id. (cleaned up).

Plaintiff states he was transferred more than two hours away from his attorney representing him in his Cumberland County

10

criminal case and the "'video lawyer visits' [are] plagued with issues such as (making it hard to communicate): Inability to 'Hear' on some [and] Inability to 'see' on some (or Both)." ECF No. 1-3 at 33.  He also asserts the "system are not compatible (Lags; Gargled sounds; echo's and etc." . . . sometimes by the time it comes on, there's only minutes left . . . ." Id.  He asserts there are no legal calls at the jail,[4] and there is a "'hardship' with have 'In Person Visits' with counsel under 'Lawyer Client Privilege' (privately) by being 'over 2hrs away' and being severely behind in addressing the abundance of legal issues that engulf my criminal matters." ECF No. 17 at 7.  Essentially, Plaintiff argues "[t]he Host of issues with the jails video calls . . . disrupts the ability to effectively communicate." Id. at 7.

    Plaintiff's personal belief that video and telephone calls are not as effective as in person visits with counsel does not state a Sixth Amendment claim under § 1983.  There are no facts in the complaint that would support a reasonable inference that HCJ's technological difficulties are the result of a prison regulation or practice implemented by Defendants Avilles and

---

[4] Although, Plaintiff later states that "[m]ost times you have to wave a piece of paper with a 'phone number & extension to call' for lawyers as a result of these 'audio & visual issues.'  So they can then call a regular phone also located in those 'video visit/Lawyer visit rooms.'" ECF No. 17 at 8.  This indicates detainees are able to speak with their attorneys via telephone.

11

Edwards that unjustifiably obstructs the availability of professional representation.  The Court will dismiss this claim without prejudice.[5]

IV. CONCLUSION

For the reasons stated above, the Court will permit Plaintiff's denial of medical care and conditions of confinement claims relating to Hudson County's COVID-19 response to proceed. All other claims and defendants will be dismissed.

An appropriate order follows.


Dated: March 20, 2023                s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

---

[5] The Court's decision is limited to a Sixth Amendment claim under § 1983 and does not address ineffective assistance of counsel claims for purposes of postconviction or 28 U.S.C. § 2254 proceedings.

12